IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**TIFFANY NICOLE GOLDMAN,**
**on Behalf of J.D.W.**                                                                         **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 4:21cv-160-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY[1]**
**DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding her application for supplemental security income on behalf of JDW, a minor. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard oral argument, finds the decision of the Commissioner of Social Security should affirmed.

## FACTS

The plaintiff, Tiffany Nicole Goldman, (Goldman), filed for benefits for her son JDW on April 29, 2019 alleging onset of disability commencing on February 8, 2019. The Social Security Administration denied the claim initially and on reconsideration. Following the

---

[1] The clerk of the court is directed to amend the style of the case to reflect that the defendant is the Acting Commissioner as reflected above.

hearing, the ALJ issued an unfavorable decision on February 2, 2021. (Dkt. 10 p. 21-32).[2] The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ determined JDW had the following severe impairments: autism spectrum, oppositional defiant disorder, and selective mutism. The ALJ found JDW did not have an impairment that met or medically equaled Listing 112.20 and 112.08 due to either his autism or defiant oppositional disorder. The ALJ found, in reviewing the "B" criteria that JDW has moderate limitations in understanding, remembering, and applying information; in social functioning; in concentrating, persisting, and maintaining pace; and in his ability to adapt or manage himself. He did not meet the listing for 111.09 for selective mutism because he did not have a documented speech impairment that significantly impacted the clarity and content of his speech or a comprehension deficit that caused ineffective verbal communication, nor a hearing impairment.

The ALJ also determined that JDW did not have an impairment or combination of impairments that functionally equaled a listing, considering the six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with others; (4) moving about and manipulating objects; (5) caring for himself and others; and (6) health and physical well-being. The ALJ found that JDW had no limitations in moving about and manipulating objects or in health and physical well-being. JDW has less than marked limitations in other areas of functioning. Because JDW did not have either marked limitations in two areas of functioning or an extreme limitation in one domain, the ALJ found he was not disabled.

---

[2] All references are to the administrative record, using the court's numbering system, rather than the administrative numbering.

## STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Richardson,* 402 U.S. at 390.

## ANALYSIS

The plaintiff has raised three arguments in support of her appeal. First, she argues the ALJ erred in his evaluation of the opinions of Dr. Michael Whelan, a consulting examiner. She next argues that he failed to resolve the contradictions he found in two reports by a school-based counselor, Ms. Topps. The plaintiff finally argues but at the ALJ failed to resolve contradictions between Exhibit 14 E, JDW's school records, and the school's individual educational program (IEP). The court finds that each argument is in fact an invitation for the court to reweigh the evidence and substitute its judgment for that of the ALJ. As the ALJ acknowledged, and the plaintiff argues, this case presents sharply conflicting, contradictory evidence. One

The record viewed in the light most favorable to the plaintiff presents a compelling case for finding JDW is disabled. There is IQ testing on the Reynolds Intellectual Assessment Scales which found a composite IQ of 68. He had been diagnosed as being on the autism spectrum; had few friends and reported being teased and bullied at school. Dr. Whelan characterized his social difficulties as moderately severe. JDW reported that he got along with only two of his seven teachers and the school record noted multiple episodes of JDW causing classroom disruption with multiple angry outbursts and defiant behavior directed at teachers. While JDW was not in special education, he received accommodations and special assistance at school, yet continued to struggle academically. He has significant problems with reading and reported he did not like reading. He reported he liked math and was good at it but received a failing grade in the subject right after the hearing.

But the contrary view of the record amply supports the ALJ's findings. Dr. Whelan produced the testing that showed low achievement levels in multiple subjects but found that JDW tested within the average range of intelligence, though his language development was not as developed as his non-language skills. The Reynolds Intellectual Scales, he added, did not

4

correctly measure JDW's intellectual functioning. Dr. Whelan noted the earlier diagnosis of Asperger's syndrome but did not find signs of this during a brief mental status exam. He noted his socially withdrawn behavior might be an emotional issue from the reported bullying and teasing. Whelan found JDW had a guarded prognosis "because he is apparently prone to give up on certain tasks and not try as hard as he is capable of performing." R. 380.

The state agency doctors after reviewing the records, reported "less than marked" limitations in the four domains noted in the RFC and no limitations in the other two domains. The schools IEP noted JDW was showing great improvement and maturation in the last year. They said he had improved tremendously in his social skills and begun speaking with his peers and expressing his feelings appropriately with some of the teachers and staff. He was dealing better with issues that had previously caused him to shut down. He readily finished assignments when offered a reward such as free to time to play on a computer or read. The IEP noted he enjoyed reading and particularly excelled in math. This report noted he was on grade level in math and slightly behind in reading.

The ALJ was correct when he noted: "This case is perplexing because school and mental health records are contradictory, making it difficult to discern when the claimant's poor performance is the result of impairment or lack of effort." R. 28 The ALJ found there was no question that the JDW's impairments caused some limitations, but the penultimate issue was whether those impairments were so debilitating as to rise to the level of marked or extreme limitations. The ALJ decided that those impairments did not rise to that level and in a detailed opinion explained why he reached those findings.

He accepted Dr. Whelan's testing results as the accurate measurement of JDW's intellectual capability. The plaintiff points to the bad grades JDW received after the hearing,

5

including failing in math, his best subject. But the ALJ lists his grades over a longer time. The grades varied but showed that JDW achieved grades in an average range in all subjects at one time or another, excepting only social studies which would reflect his relative weakness in language skills. He looked at Topps' conflicting reports issued a year apart. He agreed with the earlier of the two assessments that indicated less impairment. He noted JDW was prescribed a very low dose of Risperdal that was not indicative of a debilitating impairment, and even so, it was reported to Whelan that JDW was not taking any medications.

Clearly this unfavorable result was not the only one that could be reached on this record, but it was the ALJ's decision to make on the conflicting evidence. Because the decision is both supported by ample evidence and the judge's reasoning and rationales aptly set out in the decision, this court must affirm.

### The Individual Grounds

Having addressed the overall merits of the appeal the court addresses the specific arguments raised by the plaintiff.

### 1. Evaluation of the Opinion of Dr. Michael Whelan

Dr. Michael Whelan evaluated JDW on August 14, 2019. Dr. Whelan's report was two pages long  The ALJ spent virtually the same amount of space addressing the report and did not omit any significant facts or findings from the doctor's report. The ALJ found Dr. Whelan's report to be persuasive based on the objective medical evidence, Whelan's personal evaluation, his expertise, and the reports rational and persuasive discussion and conclusions based on the medical record. R.30.

The plaintiff does not challenge the persuasiveness decision but instead suggests that the ALJ failed to completely evaluate Whelan's opinion and to consider certain aspects of his

findings such as the fact that JDW was repeating the sixth grade, had an IQ test score of 68, was socially withdrawn and would sometimes shut down and not do what his teachers requested. She argues the ALJ did not properly consider the fact that JDW tested at the third grade and fourth grade levels in several subjects.

Not only are each of the matters the plaintiff points to specifically mentioned in the discussion of Whelan's report, but the decision mentions Whelan's findings several times during the analysis of the evidence. The court finds no error in the analysis of Whelan's report. Nothing in the decision suggests the ALJ did not fully consider all aspects of the doctor's report in the decision-making process.

**2. The Topps Reports**

As mentioned above, there are two reports from Kynesha Topps, a school-based therapist. Topps routinely counseled with JDW and his family concerning his behavior issues, including defiant and angry behaviors. She counseled him in working toward not being disruptive and listening, not talking in class. As noted by the ALJ, her treatment records showed improvement in his classroom behavior, completing his work, not getting in trouble for talking and getting along with his peers. She also noted a teacher's report of improved behavior. She repeatedly described JDW as oriented, cooperative, with euthymic mood, normal affect, and appropriate eye contact. The ALJ also noted Topps found his motor activity, speech, thought content, thought processes, and perception were all within normal limits. R. 27-28

In the first of her two reports in November 2019 Topps noted the diagnoses of autism, oppositional defiant disorder, and selective mutism. He was prescribed Risperdal and seen for therapy on a weekly basis. The family received bi-monthly therapy. She said he had fair ability to comprehend oral instructions, understand and participate in discussion and apply problem-

solving skill, but poor ability to provide verbal explanations and descriptions. She thought he had fair to good ability to pay attention when spoken to directly, carry out single-step instructions, focus long enough to finish assigned tasks and refocus and work at a reasonable pace. She thought he would have poor ability to complete tasks without distracting himself or others. He exhibited fair ability to maintain his appearance, respect and obey family, and show adequate manners, patience, and concern for others. He could use good judgment in matters of safety. JDW showed poor ability to interact cooperatively with other children and in respecting and obeying teachers and other adults. The ALJ, after considering Topps persistent care and treating relationship, found this report to be persuasive because supported by her records.

Topps prepared a second report in November 2020, completing a mental impairment questionnaire. She thought JDW had marked limitations in understanding, remembering, and applying information; in social interaction; and in maintaining concentration, persistence, and pace. She found he had moderate limitations in self-care, but no limitations in movement and manipulating objects. The ALJ found this report was not persuasive because 1) not supported by her own treatment records; 2) strongly at odd with the schools August 2020 report in Exhibit 14E, R. 17-37; and 3) directly contrary to the findings and opinions she offered in November, 2019.

The plaintiff makes several arguments under this assignment. First, she argues there is no real conflict between the reports, but rather just a difference in the language used in the reports to describe the same limitations. She argues the ALJ should have found JDW disabled under either report. She asserts the ALJ though finding first report persuasive, did not incorporate its findings into the decision. But Goldman is equating the findings of poor ability in some areas of this first report with a marked impairment. While the ALJ could have interpreted these "poor" ability findings as equivalent to a marked impairment, the "poor" findings were mingled with findings

8

noting milder impairment, sometimes within the same domains of functioning as the "poor" findings. The ALJ found these opinions as showing a less than marked impairment. This interpretation is supported by the evidence in the record. The ALJ's decision that these impairments were not "marked" is also generally supported by the opinions of Dr. Whelan and specifically supported by the state agency opinions.

The plaintiff also argues, given the extent of conflict between the reports, the ALJ was obliged to contact Topps to resolve the conflict between the reports, or alternatively to resolve the conflicts by employing a medical expert. The ALJ, Goldman argues either cherry picked the record or relied on his lay opinion instead of expert opinion. The two reports do in fact directly and substantially contradict one another. The later report was found to be not persuasive, and the decision explained appropriately by the ALJ.

The ALJ resolved the opinion and other evidentiary conflicts in deciding the claim. The court finds no abuse of his discretion in deciding he had sufficient information to resolve those conflicts and reach a decision. The court cannot disturb that decision.

### 3.  The School Records

The plaintiff argues the school records were improperly considered and the ALJ failed to resolve all the contradictions between the school records and the school's 2020 IEP. She argues that the records show JDW was repeatedly reported for disruptions and defiant behavior and arguing the school disciplinary records conflict with the IEP assessment. The report noted he was showing strides in maturation over the prior year. It bears noting that a continuation of some behavioral problems is not necessarily inconsistent with a report of improvement. But just as the ALJ is not required to address every piece of evidence, there can be no requirement that every potential factual dispute be resolved within the decision. These arguments seek a different

evaluation and weighing of the evidence. There is evidence in the record to support a favorable decision, but because substantial evidence also supports the denial, the decision must be affirmed.

**IT IS ORDERED** that the decision of the Commissioner should be, and it is hereby affirmed.

**SO ORDERED** this the 19th day of September, 2022.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**